324-0548 Stephen Broyles, Appellant, v. Bolingbrook Firefighters' Pension Fund and the Board of Trustees of the Bolingbrook Firefighters' Pension Fund, Appelese. Mr. Moran, are you ready to proceed? I am, Your Honor. You may do so. Thank you, Your Honor. I would like to reserve five minutes for rebuttal, please. Yes. Thank you. So, if it pleases the Court, my name is Scott Moran. I'm representing Mr. Stephen Broyles this morning in this manner, and we are the plaintiff appellees. The issue this morning, this afternoon before the Court is, is the Pension Board's decision related to the finding of a non-duty disability related to a degenerative back condition against the manifest weight of the evidence of the record? And we believe it is. Not only is it against the manifest weight that there's no evidence in the record that ultimately supports that particular conclusion. And driving down to the point on page C-37 of the record, the Pension Board comes to its ultimate conclusion on what disabled Mr. Broyles. And under a title, Applicant's Injury is Longstanding Pre-existing and Degenerative Condition, the Board goes through initially and it cites to the two doctors that it ultimately relies upon, Dr. Sahni and Dr. Singh. And it goes through first Dr. Singh's opinion that they found that Dr. Singh had a normal lumbar examination with full strength and cessation, no reflex changes, had resolved his back issues and could be released to full and unrestricted duty. The Board goes on to then talk about Dr. Sahni, who found that he did not suffer from a disabling condition that prevented him from working, that he was without an active lumbar diagnosis, and he had resolved all of his back issues. Dr. Sahni goes on that he confirmed these conclusions in a second IME report. And in light of the evidence of the record, the Board concludes that the applicant did not meet his burden by proving his back injury was incurred or resulting from an active duty. However, the Board says Dr. Singh and Dr. Sampak concluded that after the September 2021 incident, applicant resolved issues related to his lumbar spine condition and could return to full and unrestricted duty as a firefighter. So those are the findings of the Board in that section. Dr. Sahni and Dr. Singh both say everything's resolved, go back to work, there's nothing wrong with your back. But the Board goes on, it says, however, as the trier of fact, the Board is well within its entitlement to make credibility determinations, assign weight, testimony and evidence. And ultimately, we decide to believe the opinions and conclusions of Sahni and Singh that applicants final and permanent back issues were a result of degenerative disease rather than an active duty. Except Dr. Sahni and Dr. Singh didn't say that there was any permanent back injuries. They both released him to full and unrestricted duty. All right, and that and they go on to say rather than active duty and that applicants injury after the September 2021 incident was resolved. Then if Dr. Sahni and Dr. Singh have released him to full and unrestricted duty, then how can the Board adopt an opinion and believe their opinions that he is suffering from a degenerative condition? There is no record in the evidence that supports that. If we look at the deference that's required to give to the Board, they do get deference. However, when findings are unreasonable or not based on the evidence, then that's against the manifest weight of the evidence. And there has to be at least competent evidence in the record to support its decision. So if we go through and we look at the opinions of all of the doctors that gave opinions on this related to the Board, first we have Dr. Hsu. And Dr. Hsu comes to the conclusion that an active firefighting duty did cause the disc herniation. And he goes on to say that the that he did not report any radiating symptoms. And Dr. Hsu goes on, I do not believe the acts of firefighting duty nor the cumulative effects exacerbated his pre-existing condition. We don't dispute there was a pre-existing back condition. He had multiple back injuries over the course of his year, his career. In May of 2021, he had a back injury. In September of 2021, he goes to his doctor for his annual exam. The record shows he complains of no pain. And then this September 2024 injury appears. So Dr. Hsu says this was not an exacerbation of a pre-existing condition, but rather a new injury. As we move on, Dr. Sampat comes to the conclusion that he did a new injury as a result of his firefighting duties while trying to assist a patient. And that's the September 2024, 2021 incident that that rose to the occasion which rendered him disabled. All right, Dr. the Board tries to diminish Dr. Sampat's opinion and say that it wasn't very clear. But a reading of the record says that Dr. Sampat comes to that conclusion that it was an act of duty that caused this. One quick question. I'm hearing your argument about those findings, but I am correct to say that a line of duty disability can be awarded even if whatever happened at work did aggravate a pre-existing condition, correct? Absolutely, Your Honor. We're just making sure. So part of the Board's decision, and I'm really was trying to focus on really the heart of this matter and stay out of the fringe. The Board says also comes to the finding in its decision that he did not exacerbate his underlying condition. And therefore, an act of duty did not exacerbate it. Dr. Hsu says it's a new injury. Dr. Sampat says it's a new injury that he did not, in fact, did not exacerbate his underlying condition. And then we have Dr. Sani and Dr. Singh, who says that he's resolved and can go back to work. But that's the opinion that the Pension Board adopts. And they cite to nothing in the record that supports the conclusion that a pre-existing degenerative condition is what caused his disability. No doctor has come to that opinion. Dr. Hsu and Dr. Sampat say it's a new injury and he did not exacerbate anything. And Dr. Sani and Dr. Singh say he can go back to work. So those are the conflicting issues of the medical opinions. And as we go through this, we find that we took Dr. Sampat's deposition. Dr. Sampat testified and did not change his opinion. He discussed that Dr. Ross's surgery that took care of the compressed nerve in Firefighter Boyle's back was technically perfect and he could return to full and unrestricted duty. Yet the board adopts this degenerative position that just doesn't exist in the record. Problematic with Dr. Sampat is he failed to review all of the medical records. He said if it's not in his, when he testified, that if it's not listed in his report, that he didn't review those. And one of the things that Dr. Sampat wasn't able, I'm sorry, Dr. Sani wasn't able to resolve is in his opinion, he talks that there's no objective evidence and no complaints on October 3rd of 2022 when he does his examination of Mr. Boyle's. The irony to that is the morning of that examination, Mr. Boyle's goes to physical therapy. And if you look at C957 of the record, the first thing in there it says is patient reports, he had a horrible weekend of pain that kept him up. Low back was aching most of the weekend. So he goes that day to physical therapy and he complains of pain. He testifies in the pension board hearing that he tells Dr. Sampat or Dr. Sani this. And then he, Dr. Sani says there's no objective evidence and there's nothing, no complaints of pain. So he's all over the road in his opinion. The problems that we would like to point out and we pointed out extensively in our briefs, the records that were ignored. Dr. Singh, who was hired by the village as part of the worker's compensation claim, first comes to the opinion also that he is fit for full and unrestricted duty, but he doesn't get all of the medical records. There are limited records going back to be able to evaluate the history of Mr. Boyle's and how that comes through. And then after his examination of him in 2022, he doesn't see surgical reports. He doesn't see follow-up physical therapy notes. There is nothing there. So Dr. Singh issues a second opinion. And in his second opinion, he finds that there's a normal neurological exam, that there's no radiculopathy. And he makes these notations that Dr. Singh says he has a normal neurological exam with full strength, sensation, and no reflexes. And that's on page 776. Except Boyle's never goes back to see Dr. Singh for a second opinion. So how can Dr. Singh come to an opinion on objective examination testing that he has a normal neurological exam when he isn't there to give him that examination? Now, in its brief, the pension board tries to argue this away, that the doctor is using records from other treaters to help to come to that conclusion. But those records don't say that. Dr. Ross's records continually talk about pain during that period, that there's range of motion issues. There is physical therapy records that dispute all of that. So now the board is relying on an opinion from a doctor who has less than all of the medical records, and really comes to an opinion that isn't supported by the record either. So we find that the board's decision in finding him disabled as not as the result of an active very problematic, obviously. Now that day, Mr. Boyle shows up to work in September of 2021. He's working there with his coworkers. He is doing his daily work as the record shows. He goes on four different types of ambulance calls. He goes on two car accidents and he goes on two medical calls and witnesses testify that he has no problems. He goes to the fifth ambulance call where they're lifting a person up from the driveway who had a, I believe it was a hip injury. And he stands up and says, ow, my back hurts, reports it to his supervisor. They put him in the fire truck. He's complaining of pain and radiculopathy down his leg. And they transport him to the hospital. While en route to the hospital, the ambulance gives him 85 milligrams of fentanyl. And while at the hospital, the emergency room gives him another 100 milligrams of fentanyl during the pain, as a result of the pain. So we have an instance where here he is on the scene. This is it reported days later. And he has this injury that causes these problems and this pain at the time of occurrence. So we don't see that there's a break in the record that would reflect that this injury could possibly be related to any other cause other than the September of 2021 accident in which he was which obviously is an active duty. And active duty is any act required by ordinance, department order, or for saving the life or property of another. Certainly caring for an injured person is an active duty. And if there's any other questions, I'm running out of time. I'm happy to answer those. Justice Davenport or Justice Peterson, any questions at this time? No questions. Thank you. Mr. Moran, you will have that opportunity to rebuttal. Thank you, Mr. Marzullo. Justices of the court, again, Jerry Marzullo on behalf of the APALE, the Bolingbroke Firefighters Pension Fund. Thank you again for your time today, for allowing oral argument in this matter, and thank you for your close look at the record. And when I say close look at the record, what that is going to do, justices, is it's going to reveal what the appellant, the applicant in this matter, has done in front of the pension board, the briefs in the circuit court, and now the briefs in the appellate court in this very oral argument, which is to do an incredible amount of cherry picking to fill the narrative and foster the narrative that the appellant wants you to hear. The case before you is actually not particularly complicated. A plaintiff has longstanding degenerative disconditions that have naturally progressed to the point that he can no longer work full and unrestricted firefighter duties. One of the interesting things that counsel for the appellant pointed out right before the end of his oral argument was that there's nothing else in the record to point to other than this September 21 injury that occurred. That cannot be further from the truth. There are literally hundreds of pages in the record that point to degenerative longstanding back conditions that this board found as the trier effect and under the manifest weight of the evidence standard was the actual cause of plaintiff's longstanding conditions. So a seven-year gap between, I think it was the 2014 injury and the ones, and then I know there was a one or two weeks off in 21 a couple months earlier, but I mean, there was a seven-year gap between 2021 and the last manifestation of any injury related to a degenerative condition. Would that be an unfair characterization? No, I don't think that's an unfair characterization, but I think that supports the fact of the medical records that show that there's these degenerative conditions, right? Because there's seven years of unreported that we know of. We don't know what Mr. Boyles, what was happening outside of work, what was going on with him, what was going on with his back. But if you look at that, that seven-year period supports this vast 20-year degenerative disc condition. And to just go to that and jump right into it, in 2011, so just keep this in mind when we recall counsel saying, there's this unbroken record and you can't point to anything else. In 2011, at least that we know of, the appellant is diagnosed with degenerative spondylosis, really in English, degenerative disc disease. The same disc disease that has now progressed to the point where he can no longer work full and unrestricted duty. In 2021, when he injures himself, and we absolutely do not, we don't dispute that he injured himself in September of 21, he goes to the emergency room, et cetera. At the hospital, he's diagnosed with lumbar pain and degenerative disc disease. Shortly after he goes to the emergency room, there's a CT scan, degenerative disc disease. October of 21, and again in November of 21, multiple further scans, degenerative disc disease. Dr. Miskiewicz, who treated the plaintiff or the appellant in this matter, degenerative disc disease. So counsel wants us to purely focus on the September 21 incident, but that is not what the trier of fact or the pension board is required to do. The pension board is required by law to look at the entire record as a whole. It then makes these determination, these credibility determinations, factual determinations, looking at the entire record as a whole. And when you look at that, you find that under the manifest weight of the evidence, this grand argument that somehow the pension board got it wrong, and it violates manifest weight of the evidence, et cetera, completely disintegrates and falls apart. The board did exactly what it was required to do. The fact is, is that the appellant just doesn't like the decision, but that doesn't mean that the appellant gets to substitute how it thought it should go for how the board felt that it should go after reviewing the entire record, including 20 years of medical history. And that actually bears out justices. And that's why I'm talking about earlier in my argument, we were talking about the cherry picking of arguments that actually bears out with what the IME doctors found and what the board found. Mr. Marzullo, excuse me. I understand and appreciate your argument, but how do we deal with the two doctors who very recently in the 20s talk about how he was cleared for duty and was able to go back to work without any issues as to the back injuries prohibiting him from going back to full duty. Now that was a recent diagnosis. That was recent history saying he was cleared to go back and that wasn't 2011 or 2015. That was current. Yeah, absolutely. And how we reconcile that is we're doing exactly what the board did, which was look at the entire record as a whole. So you cannot reconcile exactly what your question is until you reconcile the entire record as the whole and all of the doctor's opinions. So in order to do that, in order to reconcile that, we have to jump into what the doctor's opinions are, right? So Dr. Sampant, which now conveniently with the way that that examination went, Apollon has no issues with, finds line of duty disability. He does find in his reports though, however, that the subjective complaints don't really match the objective record. You can see that in Dr. Sampant's findings, there's an unusual amount of physical therapy, but ultimately he finds line of duty disability. So let's get to the other doctors in the 20s as you stated in C. The board also took into account the IME because when you look at the decision and order, the board took all of this in account, referenced all of this and said that they're required to look at the record as a whole. The board also took into account Dr. Sue who found pre-existing conditions. And when you look at page 1053 of the record, what you find for Dr. Sue is that the applicant did not suffer a work-related exacerbation of his pre-existing condition, but did suffer a work-related aggravation of that left side herniation that Apollon is talking about, right? That's one of the doctor's opinions. Again, they took into account Dr. Sani, right? Dr. Sani also finds that there are these degenerative issues. Every doctor found that there's these pre-existing degenerative longstanding disc issues. Every doctor who has examined him or treated the appellant in this matter. Dr. Sani says, yeah, there was the left side herniation that resolved itself. And what you're left with is the degenerative longstanding issues. Dr. Singh found, yes, longstanding degenerative issues and this left side herniation resolved itself. The problem is, Justice Davenport, the problem is, is that what the appellant wants you to do and what he wants the appellate court to do is to look at these doctor's opinions in silos. Solely Dr. Singh, solely Dr. Sani, solely Dr. Sampat. And that's not what the board did. And that's not what the board is required to do. The board looked at the record as a whole and said, okay, hold on a second. Is it more likely or not? And the applicant's burden of proof, we have all of these records. We've looked at this. What picture does it paint? Is it more likely or not that it is this single issue in September of 21 that aggravated this and caused him to be unable to work? Or is it more likely than not that the picture is painted of an individual who has longstanding degenerative disc disease, had a temporary aggravation of a preexisting condition, and were left with a degenerative disc disease. And there is ample records in the record, excuse me, there's ample evidence, excuse me, in the record to support that. So to say that the board got it wrong is merely to say that the appellant just does not like the result that was received. It is not against the manifest weight of the evidence. Where there is conflicting evidence and where there is conflicting testimony, it is the board's duty to resolve that. So the board looked at Dr. Singh, Dr. Sue, Dr. Sani, Dr. Sampant, Dr. Miskiewicz, Dr. Ross, everybody and said, if you put it in the pot, plus the applicant's testimony, what answer does that spit out? And what it spits out and what the records show, the CT scans, the MRIs, the x-rays, all of the findings is of an individual who suffers from longstanding degenerative disc disease. And we have in the record multiple doctor opinions that this left side herniation resolved itself. And so what we have left is the longstanding degenerative condition. And the Illinois courts have supported that under a manifest weight of the evidence standard. They've understood that under cases such as Everett, Olson, where there's a degenerative issue and not the temporary exacerbation of a preexisting condition, which is Everett. Under Olson, where there's conflicting evidence and records, but a court agreed with the fund that the symptoms were more consistent with chronic back pain than the specific incident. In English, where the court affirmed the decision where the on-duty incident may have aggravated. And what the board said is, well, at the end of the day, there was an aggravation of a preexisting condition. But there's evidence in the record to show that that resolved itself like the previous injuries have resolved themselves. There are doctors who opine that very issue. And that is something that the appellant cannot overcome is that there is record, there is medical testimony. There are IMEs that show that this preexisting condition, this left side, excuse me, these longstanding degenerative issues are on one side and on the other side is this left side herniation, this lumbar strain, whatever happened, which resolved itself. That exists in the record. The board relied upon that, took that, took all of the evidence in the record, took the testimony of the applicant and then outspit the answer. So how does the board, or excuse me, how does the appellant get around this? The appellant gets around this by, of course, saying, attacking the doctors. Now, this doctor is, you know, examined the guy. You'll see in the briefs, this doctor doesn't know what firefighters do. This doctor, you know, didn't do this type of test. This doctor didn't do something else. Let's just throw everything against the wall and say that we don't like what these doctors and their shortcomings. Here's the issue members of the court. The issue justices is that every single document that was placed before the board was run past the IME docs. At great time and expense, these doctors made multiple findings, whether they be the initial in-person examination and records reviews, and even Dr. Sani, the deposition. And Dr. Sani, even sitting through the deposition, again, very consistent that there was a resolution of this aggravation of this condition, long-standing back issues. That is what happened in the record, and that is what the board found. And the question for the justices to struggle, if I humbly may be so bold, is whether or not truly, I mean, who am I to substitute my judgment for the appellate court? But at the end of the day, justices, under the manifest weight of the evidence standard, is that inappropriate? We have what might be the unpopular opinion for the applicant in this matter, but we don't have something that is against the manifest weight of the evidence. There's no way, after the board analyzed the entire record, which the appellant is not doing in cherry-picking specific instances of the record, there is no way that in my opinion, that we can find that the opposite conclusion is clearly evident when multiple doctors have said, it resolved itself, whatever happened from September of 21, this guy has 20 years of long-standing degenerative conditions. And the board looked at that and said, okay, he's not able to do the job anymore. Here's what the medical evidence is. This is what we believe to be credible and it is what it is. To be surprised that there are no degenerative conditions or the applicant to be surprised to come before the board that the board ruled this way, defies logic when the record is replete with such evidence. Therefore, again, justices, thank you for your time and attention to this matter. These super long records are, I'm sure, so fun to deal with and to go through, but what you will find is ample evidence to support this decision that the appellant might find unpopular, but is not a manifest way to the evidence. Therefore, we ask that you affirm the granting of the non-duty disability and affirm the denial of the line of duty disability. Thank you for your time today. Justices Peterson or Davenport, any additional questions at this time? None. I do not. All right, Mr. Marzullo, thank you. Mr. Moran, rebuttal. So, Mr. Marzullo says that they took everything in the record and they put it together and they came out with this and that the record is replete with these degenerative issues. And in order to do that, though, the board has to set aside all of the opinions of the doctors that it retained to come to that conclusion. And the board cannot replace its lay opinions with those of its experts. And that's what it says. He says they just did. All right. Nowhere in the record did any doctor find he was disabled as a result of a degenerative condition. Dr. Sani and Dr. Singh both say he's fit for full and unrestricted duty. Dr. Su and Dr. Sampat both say he's disabled and that he suffered lumbar injuries as a direct result of the injury of September of 2024. So what Mr. Marzullo is saying is you have to ignore the opinions of all four of the doctors and the pension board goes through and figures out like, oh, we're medical experts and we can come to our own different conclusion. We can ignore the experts, all of them completely, and come to this conclusion that it's really a degenerative problem that rendered him disabled. He had a degenerative problem. The records are full of back injuries and how that goes. Now, Mr. Marzullo says that when he shows up at the emergency room, that those reports say that he has degenerative condition. But if we look at the records from the emergency room, all right, on page 676, the CT results say that there's a disc bulge. That was never diagnosed prior to September of 2021. It goes on to say that that's at L2, L3. At L3, L4, there's a disc bulge partially effacing the ventral fecal sac, resulting in central canal stenosis, measuring 11 millimeters. And at L4, L5, there's another central disc protrusion. Those are new findings. But let's focus on this preexisting condition of degenerative problems that no doctor rendered an opinion that he was disabled from, that we must ignore the doctor's opinions and just go with what the board figured out through the record. Mr. Marzullo says that every doctor got every single piece of evidence. That's not true. Dr. Satsingh wasn't retained by the board. He only got the small amount of evidence that the workers' comp carrier determined him to get. He got nothing about the surgical reports. He's seen nothing about physical therapy, nothing. So there is a huge void in what Dr. Satsingh has been able to see and review. So he did not get all of the records. The board just conveniently comes to this, it must be degenerative. So that's what we come to. But nowhere in the record, nowhere in their opinion, and nowhere today did Mr. Marzullo cite to anywhere in the record that comes to the conclusion that Mr. Boyles is disabled as a result of a degenerative condition. That's the board's decision that is not contained anywhere in the record, and there is no evidence to support such conclusion. So that is against the manifest weight of the evidence. So the court has to look and go, is Dr. Sani and Dr. Singh credible? And should we disregard their opinions? And should we instead rely on the opinions of Dr. Suh and Dr. Sampath? That's really where the issue lies in what becomes credible and what doesn't, and whose opinion carries more weight. And I thank the court for your time. The court appreciates and thanks both sides for spirited argument. We will take the matter under advisement and we will issue a decision in due course.